UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MALINDA HORNINGER,

    Plaintiff,

v.

OFFICER CHRISTOPHER GUPKO;
CHIEF CHESTER R. STAPLES;
SARGENT SHAWN GOUCHER;
OFFICER JOHN MANUEL and POCONO
TOWNSHIP,

    Defendants.

Civil Action No. 3:10-CV-02559

(Judge Kosik)

## MEMORANDUM

On March 2, 2012, Defendants filed a Motion for Summary Judgment. (Doc. 28). On September 13, 2012, Defendants then filed a Motion to Strike Exhibits filed by Plaintiff in Opposition to Pending Motion for Summary Judgment. (Doc. 47). Plaintiff then filed a Motion to Strike Portion of Defendants' Motion to Strike (Doc. 47) as Duplicative to Defendants' Motion in Limine (Doc. 26) on September 27, 2012. (Doc. 49). The above motions have been briefed and are ripe for review. For the reasons which follow we will grant, in part, and deny, in part, Defendants' motion for summary judgment, deny Defendants' motion to strike, and deny Plaintiff's motion to strike.

### Procedural History

Plaintiff initially started this action by filing a Complaint on December 16, 2010. (Doc. 1). The original complaint named Officer Christopher Gupko, Chief Chester R. Staples, John/Jane Doe Supervisors 1-X, John/Jane Doe Officers 1-X, and Pocono Township as defendants. (*Id.*). On February 7, 2011, Defendants filed an Answer to the Complaint with Affirmative Defenses. (Doc. 3). On November 30, 2011, Plaintiff filed a Motion to Substitute Parties for the John/Jane Doe Defendants. (Doc. 14). That motion was granted by this Court on January 6, 2012. (Doc. 18). Sergeant Shawn Goucher was substituted for Defendant John/Jane Doe Supervisor #1, Officer John Manuel was substituted for Defendant

John/Jane Doe Officer #1, and all other John/Jane Doe Defendants were dismissed from the action. (*Id.*). These Defendants then filed an answer to the Complaint and affirmative defenses on January 16, 2012. (Doc. 23).

Defendants filed a Motion in Limine on March 2, 2012 asking that the Court preclude admission of or reference to, during jury selection, opening statements or the evidence presentation of this particular matter, the Pocono Township Police Department's internal investigation and/or grievance proceedings or arbitration proceeding. (Doc. 26). This motion was fully briefed and is ripe for review, but will be handled at a date closer to trial.

Defendants filed their motion for summary judgment and supporting documents on March 2, 2012. (Doc. 28, 29, 30, 31). Plaintiff filed an Answer to Statement of Facts and a Brief in Opposition to the Motion for Summary Judgment on August 31, 2012. (Doc. 45, 46). Defendants then filed a Motion to Strike Exhibits Filed by Plaintiff in Opposition to Pending Motion for Summary Judgment with a brief in support on September 13, 2012. (Doc. 47, 48). Plaintiff then filed her Motion to Strike Portion of Defendants' Motion to Strike (Doc. 47) as Duplicative to Defendants' Motion in Limine (Doc. 26) with a brief in support, as well as a brief in opposition to Defendants' motion to strike on September 27, 2012. (Doc. 49, 50, 51). Defendants responded to Plaintiff's motion to strike by filing an answer to the motion on September 28, 2012 and a brief in opposition to the motion to strike on October 17, 2012. (Doc. 52, 56). Defendants additionally filed a reply brief to Plaintiff's brief in opposition of their motion to strike. (Doc. 57).

**Factual Background**

As we indicated earlier, Plaintiff filed her Complaint on December 16, 2012. (Doc. 1). In her Complaint, Plaintiff alleges an excessive force and physical brutality claim pursuant to 42 U.S.C. § 1983 against Defendants Gupko, Goucher, and Manuel in their individual capacities; a supervisory liability claim pursuant to 42 U.S.C. § 1983 against Defendants Staples and Goucher in their individual capacities; a failure to intervene non-supervisory claim

2

pursuant to 42 U.S.C. § 1983 against Defendants Manuel[1] and Goucher in their individual capacities; a civil conspiracy claim pursuant to 42 U.S.C. § 1983 against all individual defendants in their individual capacities; a municipal liability claim pursuant to 42 U.S.C. § 1983 against Defendant Pocono Township; a claim concerning violations of the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. § 12101 *et seq.*, against Defendant Pocono Township; Pennsylvania Constitutional violations against individual defendants in their individual capacities; claims for assault and battery against Defendants Gupko, Goucher, and Manuel in their individual capacities; a claim for intentional infliction of emotional distress against Defendants Gupko, Goucher, and Manuel in their individual capacities; and a civil conspiracy claim against all individual defendants in their individual capacities. (*Id.*). As relief, Plaintiff seeks compensatory and punitive damages, reasonable attorney's fees and costs, and such other and further relief as this Court may deem appropriate. (*Id.*).

The allegations of Plaintiff's Complaint involves events that happened on the evening of Tuesday, December 16, 2008.[2] (*Id.*). Plaintiff[3] had spoken with her sponsor throughout the day in question and had also attended a women's AA meeting at the Carbon/Monroe/Pike Drug and Alcohol Center that ended at approximately 7:15 p.m. (Doc. 30, ¶¶ 27, 28). On her way home[4] from the AA meeting, Plaintiff went to a liquor store and purchased a pint of vodka at 7:33 p.m. (*Id.* at 29). Plaintiff then went home and consumed the pint of vodka over

---

[1] In the Complaint, this claim is brought against Defendants Gupko and John/Jane Doe Officers 1-X in their individual capacities. (Doc. 1, Count III). For the purposes of summary judgement, both parties treat this count as being brought against Defendants Manuel and Goucher. The Court finds that Defendants Manuel and Goucher are the logical defendants for this claim and will treat them as such.

[2] Although Defendants filed a document called "Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment," based on Plaintiff's response to that document, those "material facts" are not undisputed. (Doc. 30, 45). Because this is a motion for summary judgment filed by Defendants, we will view the facts in the light most favorable to Plaintiff.

[3] "At the time, and to the present day, Plaintiff suffers from a bipolar mental condition. She is also a recovering alcoholic." (Doc. 1, ¶ 11).

[4] Plaintiff's residence was located at 32 Evergreen Court, Swiftwater, Pennsylvania. (Doc. 46, p. 2).

the course of the evening. (*Id.* at 30; Doc. 45, ¶ 30). Plaintiff alleges that she then turned off her telephone and fell asleep. (Doc. 46, p. 2).

Plaintiff's sponsor, Roberta Bush, attempted to call Plaintiff that evening. (Doc. 30, ¶ 35). After Plaintiff failed to respond to the telephone calls, Mrs. Bush, and her husband, Merlyn Bush, drove to Plaintiff's residence. (*Id.*). When Mr. and Mrs. Bush arrived, they knocked at both the front and back doors, as well as knocking on the living room window. (*Id.* at 37; Doc. 45, ¶ 37). Mrs. Bush looked through Plaintiff's living room window, saw Plaintiff lying on her living room couch, thought Plaintiff was dead, and became concerned for Plaintiff's well-being. (Doc. 30, ¶ 38; Doc. 46, p. 2). When Plaintiff failed to respond to the knocking on the doors and window, Mrs. Bush initiated an emergency call to the Monroe County Communications Center. (Doc. 30, ¶ 40).

After the call, emergency medical personnel and officers from Pocono Township arrived.[5] (*Id.* at 44 - 49). "Continued efforts in banging on the door and window as well as the use of a flashlight did not raise the consciousness of the Plaintiff." (*Id.* at 53). Law enforcement personnel and the paramedics then made entry into the Plaintiff's residence. (*Id.* at 58). The paramedics began their assessment of Plaintiff. (*Id.* at 61). "At this juncture, [Defendant Goucher] noted that there were pills on the counter and that an empty bottle of vodka was found in the garbage." (*Id.*). "Plaintiff was finally awoken by the officers and emergency medical personnel. She was startled to see numerous people standing over her." (Doc. 46, p. 3; *See* Doc. 30, ¶ 62).

After Plaintiff was awoken, she indicated that she needed to use the bathroom. (Doc. 30, ¶ 63). Mrs. Bush accompanied Plaintiff to the downstairs bathroom. (*Id.* at 63). Defendants allege that Plaintiff wanted to use the upstairs bathroom, but for Plaintiff's safety,

---

[5]Earlier that night, Defendant Gupko was dispatched to the home of Plaintiff's estranged husband, Kevin Young, because Mr. Young's car was "keyed" and he believed that Plaintiff was the perpetrator. (Doc. 30, ¶¶ 41-43). Defendant Gupko was already en route to Plaintiff's house "when he received a dispatch, a '1047' (ambulance call) for an unconscious female." (*Id.* at 44).

4

Defendant Gupko directed Plaintiff to use the downstairs bathroom. (*Id.*). Plaintiff alleges that Defendant Gupko directed Plaintiff to use the downstairs bathroom, which she alleges was not working, for reasons not including Plaintiff's safety. (Doc. 45, ¶ 63). Plaintiff also alleges that Defendant Gupko said, "let her piss on the gurney." (*Id.*).

Plaintiff and Mrs. Bush went to the downstairs bathroom while Defendant Goucher remained in the kitchen. (Doc. 30, ¶ 64). After some "verbal exchange," which Plaintiff alleges consisted of Defendant Gupko "pounding on the bathroom door less than 30 seconds after Plaintiff and Mrs. Bush entered the bathroom, and telling Plaintiff to 'get the hell out of there,' just as she sat down on the toilet and began to urinate," Defendant Gupko entered the bathroom. (*Id.* at 65; Doc. 45; ¶ 65). When Defendant Gupko entered the bathroom, Defendant Goucher heard a commotion. (Doc. 30, ¶ 66). Plaintiff alleges Defendant Gupko entered the bathroom by smashing the door into the back of Mrs. Bush, who was at that time 72 years of age, and pulling Plaintiff off the toilet while Plaintiff's pants were down.[6] (Doc. 45, ¶ 65). After hearing the commotion, Defendant Goucher made his way toward the bathroom and as he arrived at the entrance to the bathroom, he saw Defendant Gupko handcuffing Plaintiff. (Doc. 30, ¶ 66). After Plaintiff was handcuffed, she was escorted toward the living room. (Doc. 30, ¶ 69). Plaintiff was not injured, or at least not immediately bruised, during this time, but she found Defendant Gupko's actions in grabbing her and twisting her around to be unreasonable. (Doc. 30, ¶¶ 70-74; Doc. 45. ¶¶ 70-74).

Plaintiff alleges that Defendant Gupko used excessive force in the living room after she had been taken from the bathroom, including Defendant Gupko kneeing her in the rear and in her legs, raising her arms behind her back while handcuffed, and slamming her onto the gurney with her hands cuffed behind her back. (Doc. 30, ¶ 76; Doc. 45, ¶ 76). Plaintiff was then taken, by ambulance, to the hospital. (*See generally* Doc. 30, ¶¶ 90-110; Doc. 45, ¶¶ 90-

---

[6]Defendants allege Plaintiff was fully dressed when she was handcuffed. (Doc. 30, ¶ 68). Mrs. Bush testified that she was still pulling Plaintiff's pants up as they left the bathroom, after Plaintiff was handcuffed. (Doc. 45, ¶ 67).

5

110).⁷ Pocono Medical Center security staff were alerted about Plaintiff. (Doc. 30, ¶¶ 121-123; Doc. 45, ¶¶ 121-123). Plaintiff also asserts that Defendant Gupko used unreasonable force in the examining room at Pocono Medical Center. (Doc. 30, ¶ 114).

Defendants assert that Defendant Gupko called for assistance from the Stroud Area Regional Police Department to assist with Plaintiff since "she was becoming more and more belligerent." (Doc. 30, ¶ 125). Plaintiff alleges Defendant Gupko called the Stroud Area Regional Police Department because he needed a ride, since he had come to the hospital in the ambulance and the ambulance company had left. (Doc. 45, ¶ 125). Defendant Gupko and another officer arrested Plaintiff and transported her to the Monroe County Correctional Facility. (Doc. 30, ¶ 126; Doc. 45, ¶ 126; Doc. 46, p. 4).

After this incident, Mr. and Mrs. Bush wrote a letter to Pennsylvania District Judge Olson, as well as the Police Chief of "Tannersville". (Doc. 30, ¶ 135). Defendant Staples received the letter addressed to the Police Chief. (Doc. 45, ¶ 135). Though Defendants claim that the letter does not advise as to any use of unreasonable force by the officers in question, (Doc. 30, ¶¶ 141-142), Plaintiff disputes this and alleges that the letter did discuss inappropriate conduct by Defendant officers, and that Mr. and Mrs. Bush have repeatedly testified regarding the excessive force used by Defendant Gupko, (Doc. 45, ¶¶ 141-142). On September 10, 2009, Plaintiff wrote a synopsis of events that took place on December 16, 2008, at the request of Defendant Staples. (Doc. 30, ¶144; Doc. 45, ¶ 144).

## Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material when it could affect the outcome of the suit under the

---

⁷The Court notes that there are various disputes between Plaintiff and Defendants regarding what the paramedic thought and saw, what happened in the ambulance and hospital, and why Plaintiff was taken to the hospital. (*See generally* Doc. 30, ¶¶ 90-134; Doc. 45, ¶¶ 90-134).

governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. The court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *Hugh v. Butler County Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257; *see Celotex Corp.,* 477 U.S. at 323-24. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh,* 418 F.3d at 267 *citing Anderson,* 477 U.S. at 251. Neither unsworn statements of counsel in memoranda submitted to the court nor unsupported conclusory allegations in the pleadings will dispute a material fact. *See* Fed. R. Civ. P. 56(e); *Schoch v. First Fid. Bancorp.,* 912 F.2d 654, 657 (3d Cir. 1990).

If the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then no genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322.

**Discussion**

**I. Cross-Motions to Strike and Defendants' Motion in Limine**

On March 2, 2012, Defendants filed a Motion in Limine. (Doc. 26). On September 13, 2012, Defendants also filed a Motion to Strike Exhibits Filed by the Plaintiff in Opposition to the Pending Motion for Summary Judgment. (Doc. 47). Plaintiff then filed a

Motion to Strike Portion of Defendants' Motion to Strike (Doc. 47) as Duplicative to Defendants' Pending Motion in Limine (Doc. 26). (Doc. 49). For the reasons which follow, we will deny Defendants' motion to strike, deny Plaintiff's motion to strike, and we will defer ruling on Defendants' motion in limine.

Defendants' motion in limine concerns whether or not to preclude admission of or reference to, the Pocono Township Police Department internal investigation and/or grievance proceedings or arbitration proceedings. (Doc. 26). Defendants' motion to strike concerns whether or not Exhibits "D" and "I" submitted by Plaintiff in opposition to the pending motion for summary judgment should be stricken. (Doc. 47). Exhibit "D" is the expert report of John G. Peters, Jr., Ph. D. and Exhibit "I" is a disciplinary letter written by Defendant Staples reprimanding Defendant Gupko. (Doc. 45, Ex. D, I). Plaintiff filed her motion to strike, claiming that Defendants' motion to strike the letter of reprimand is duplicative of Defendants' motion in limine. We will not discuss Plaintiff's motion to strike in full detail. Instead, we will deny the motion, noting that while Defendants' motion to strike concerns evidence that is also considered in Defendants' motion in limine, there are still differences between both of Defendants' motions. We also note that, though there are similarities between the Defendants' motions, we will only discuss Defendants' motion to strike Exhibit I.

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible. *Id.* at 402. However, relevant evidence may be excluded for "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 403. "Evidence is 'unfairly prejudicial' if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'; 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish'; or 'may cause a jury to base its decision on something other than the

established propositions in the case.'" *Quagliarello v. DeWees,* 2011 WL 3438090, *2 (E.D. Pa. 2011).

Defendants move to strike the internal letter of reprimand issued by Defendant Staples following an internal investigation into the complained of conduct of Defendant Gupko, designated "Exhibit I," because it is irrelevant, prejudicial, and not probative. (Doc. 48, p. 6-7). We do not agree with Defendants' characterization of this evidence. The letter of reprimand is relevant, probative, and not unfairly prejudicial. It concerns the events that happened on the night in question and explains how Defendant Staples addressed these issues. As such, Defendants' motion to strike "Exhibit I" will be denied.

Defendants also move to strike the expert report of John G. Peters, Jr., Ph. D. Defendants argue that the expert report should be excluded from the summary judgment record "as it contains improper legal conclusions, irrelevant opinions, and attempts to instruct the jury on how to decide factual issues." (Doc. 48, p. 7). Plaintiff opposes the motion to strike the expert report. (Doc. 51). For the purposes of summary judgment, we will deny the motion to strike the expert report and consider the record as a whole. However, we will not consider any legal conclusions of the expert that violate the Federal Rules of Evidence. If there are further issues with the expert report, Defendants can challenge the expert report and any possible testimony by filing a proper motion before the trial.

We will deny Defendants' motion to strike, deny Plaintiff's motion to strike, and we will defer ruling on Defendants' motion in limine. If either party has further issues with the above evidence, or any other evidence, it can be handled at a later date through a properly filed motion.

## II. Motion for Summary Judgment

**A. § 1983 Excessive Force Claim Against Defendant Gupko; § 1983 Supervisory Claims; Failure to Intervene Claim; *Monell* Claim against Defendant Pocono Township; ADA**

**Claim against Defendant Pocono Township[8]; and Assault and Battery**

Defendants argue that summary judgment should be granted on the excessive force claim against Defendant Gupko, the supervisory claims, the failure to intervene claim, the *Monell* claim against Defendant Pocono Township, the ADA claim against Defendant Pocono Township; and the assault and battery claim, . (Doc. 29). Defendants explain that there is no evidence in the summary judgment record that supports these claims. (*Id.*). We disagree. After reviewing the record, we find that there are genuine issues of material fact in regards to these claims, and as such, summary judgment will not be granted on these claims.

**B. Pennsylvania Constitutional Claims**

Defendants move for summary judgment on the Plaintiff's Pennsylvania constitutional claims. (Doc. 29, p. 22-25). In her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Plaintiff states she is withdrawing her claims pursuant to the Pennsylvania Constitution. (Doc. 46, p. 23). As such, these claims will be dismissed from this case.

**C. § 1983 Civil Rights Conspiracy Claim**

"To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Marchese v. Umstead, et al.*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (citations omitted). A conspiracy is "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Id.* (*quoting Panayotides v. Rabenhold*, 35 F. Supp. 2d 411, 419 (E. D. Pa. 1999), aff'd, 2010 F.3d 558 (3d Cir. 2000) (citations omitted). "[T]he rule is clear that allegations of

---

[8]Defendants argue that Plaintiff cannot bring a claim for punitive damages under the ADA and § 1983 against Defendant Pocono Township. (Doc. 29, p. 21-22). Although Plaintiff has asserted a broad claim for punitive damages, she has not specifically asserted a claim for punitive damages against Defendant Pocono Township and does not argue against Defendants' motion for summary judgment for punitive damages as to this Defendant. As such, Defendants' motion for summary judgment for any punitive damages claimed against Defendant Pocono Township will be granted.

a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of New Jersey,* 588 f.3d 180, 185 (3d Cir. 2009) (*quoting Crabtree v. Muchmore,* 904 F.2d 1475, 1481 (10th Cir. 1990)).

Defendants move for summary judgment on the section 1983 civil rights conspiracy claim arguing that Plaintiff has failed to produce evidence of either an agreement or actions taken by the Defendants pursuant to some alleged agreement. (Doc. 29, p. 13-15). Defendants also note that, under Plaintiff's theory of a conspiracy, Mr. and Mrs. Bush must also be a part of the conspiracy as they placed the call to emergency responders for assistance. (*Id.* at 13). Plaintiff argues that "the evidence of the underlying Constitutional violations, the failure of either supervisors or other officers to intervene, and the after the fact ratification of [Defendant Gupko's] use of excessive force is more than sufficient circumstance from which a jury may infer a conspiracy to deprive [Plaintiff] of her Constitutional right." (Doc. 46, p. 18).

Defendants' motion for summary judgment on the § 1983 conspiracy claim will be granted. Though there are questions of material fact surrounding Plaintiff's underlying constitutional violations, there is nothing in the record to suggest an agreement between the Defendants to violate Plaintiff's rights in furtherance of a conspiracy. The actions of that night were initiated by the call of Mr. and Mrs. Bush to emergency responders for assistance after they became worried about Plaintiff. While direct evidence of a conspiracy may not be needed, the Plaintiff's unsupported conclusory allegations that there was an agreement by the Defendants to violate Plaintiff's rights does not provide the basis for circumstantial evidence of a conspiracy. *See Hampton v. Hanrahan,* 600 F.2d 600, 620-674 (7th Cir. 1979), *cert. granted in part, judgment rev'd in part on other grounds*, 446 U.S. 754 (1980). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Accordingly, we will grant Defendants' motion as to this claim.

### D. Intentional Infliction of Emotional Distress

As Defendants point out, under Pennsylvania law, in order to advance a claim for intentional infliction of emotional distress, the Plaintiff must prove the following: (1) a person who by extreme and outrageous conduct; (2) intentionally or recklessly causes; (3) severe emotional distress to another. *Manley v. Fitzgerald,* 997 A.2d 1235, 1241 (Pa. Commw. 2010). Existence of the alleged emotional distress must be supported by competent medical evidence. *See Kazatsky v. King David Memorial Park,* 527 A.2d 988, 995 (Pa. 1987). Defendants argue that Plaintiff's claim for intentional infliction of emotional distress must fail because she has not provided competent medical evidence that she has suffered distress. (Doc. 29, p. 26-27). Plaintiff argues that her deposition testimony describes, in detail, the treatment she received. (Doc. 46, p. 24; Doc. 31, Tab A, p. 110-114). While Plaintiff did describe the medical treatment she received in her deposition testimony, she has failed to provide or cite to any evidence in the record that would be considered competent medical evidence (i.e. doctor's report, expert report, etc.). As such, Defendant's motion for summary judgment in regards to Plaintiff's claim for intentional infliction of emotional distress will be granted.

### E. Pennsylvania Civil Rights Conspiracy

In order to state establish a civil conspiracy under Pennsylvania law, Plaintiff must show the following elements, "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. 2008). As discussed above, though there are questions of material fact surrounding Plaintiff's underlying constitutional violations, there is nothing in the record to suggest an agreement between the Defendants to violate Plaintiff's civil rights. Defendant's motion for summary judgment on the Pennsylvania civil rights conspiracy claim will be granted.

## F. Qualified Immunity

Qualified immunity protects government officials who are performing discretionary functions by shielding these officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "In addition, and particularly in § 1983 cases involving alleged violations of the Fourth Amendment, the Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar v. Felsing,* 128 F.3d 810, 826 (3rd Cir. 1997). In considering whether qualified immunity applies, a court may perform a two-step sequence[9] announced by the Supreme Court in *Saucier v. Katz,* 533 U.S, 194, 200 (2001). A court must first decide whether the facts alleged by the plaintiff make out a violation of a constitutional right. *Saucier,* 533 U.S. at 201. If a violation has occurred, then the court must decide whether the right was clearly established. *Id.*

As discussed above, there still remains questions of material fact surrounding whether Plaintiff's constitutional rights were violated. The main thrust of Plaintiff's constitutional rights violations concerns the use of excessive force against her. An excessive force claim is construed as an unreasonable seizure under the Fourth Amendment as applied to section 1983 claims. To state this claim, a plaintiff is required to show that a seizure occurred and that the seizure was unreasonable. *Ansell v. Ross Twp.,* 419 Fed. Appx. 209, 212 (3d Cir. 2011). A seizure that triggers the Fourth Amendment's protections "occurs only when government actors have, 'by means of physical force or show of authority...in some way restrained the liberty of a citizen.'" *Graham v. Connor,* 490 U.S. 386, 395, n. 10 (1989) *citing Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968). Deciding whether a particular seizure is reasonable

---

[9]*Overruled in part by Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (Relaxed the two step process by no longer requiring courts to determine the prongs in sequential order. While this two step process is no longer mandatory, it is often appropriate and beneficial.).

requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (internal citations omitted). Three factors relevant to this balancing test include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The Third Circuit Court of Appeals has also provided additional relevant considerations when deciding whether excessive force was used, including "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officer must contend at one time." *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997). Looking at the facts in the light most favorable to Plaintiff, the use of force by Defendant Gupko on the night in question may be found to be excessive under the objective standards of reasonableness. As such, Defendants cannot be granted qualified immunity on these grounds. Further, the law used to evaluate the reasonableness of force is clearly established under *Graham,* 490 U.S. 386, and *Sharrar,* 128 F.3d 810. *Ansell v. Ross Twp.*, 419 Fed. Appx. 209, 212-13 (3d Cir. 2011). We find that Defendants are not entitled to qualified immunity at this stage.

## Conclusion

Defendants' Motion for Summary Judgment (Doc. 28) will be granted, in part, and denied, in part. We will grant summary judgment as to Counts IV, IX, and X of Plaintiff's Complaint. Further any claims for punitive damages against Defendant Pocono Township and Count VII of the Plaintiff's Complaint will be dismissed. Both Plaintiff's and Defendants' motions to strike (Doc. 47, 49) will be denied. We will defer ruling on Defendants' motion in limine until a later date. A pretrial conference will be set forthwith.